**John Wallace MAXEY, Appellant
(Defendant below),**

v.

**STATE of Indiana, Appellee
(Plaintiff below).**

No. 45S00-9804-CR-195.

Supreme Court of Indiana.

June 2, 2000.

Jeff Schlesinger, Crown Point, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant John Wallace Maxey was convicted of killing his employer in the pizza restaurant where he worked. He appeals, claiming that certain procedural and evidentiary rulings unfairly prejudiced him. Finding the rulings proper or otherwise resulting in harmless error, we affirm.

We have jurisdiction over this direct appeal because the longest single sentence exceeds 50 years. Ind. Const. art. VII, § 4; Ind. Appellate Rule 4(A)(7).

### Background

The facts most favorable to the verdict reveal that on October 31, 1996, someone walked into the Stonehouse Pizza restaurant and shot and killed the owner in broad daylight.

Detective Hinojosa was assigned to the case that day and arrived on scene at approximately 4:10 p.m. By that time, police had found the victim, Chung Yoo, in the back of the restaurant in an office area. One of the victim's pockets was pulled out. Police had also recovered .22 caliber casings in the kitchen and .25 caliber casings in the restaurant lobby. Detective Hinojosa questioned the co-owner, Mrs. Yoo, who had returned to the restaurant shortly after her husband was killed. She told Detective Hinojosa that there had been a shortage in the previous day's money, and that she and her husband had confronted Defendant John Wallace Maxey about it.

Detective Hinojosa went to Defendant's home and he agreed to come to the station for questioning. Defendant confirmed that the Yoos had confronted him about the missing money. He denied involvement in the murder, however, and was allowed to leave the station. Police officials later learned from Linda Ahmed, Defendant's sister, that there were two handguns, a .22 caliber and a .25 caliber, in the

home where she lived with Defendant and others.

On the basis of this and other incriminating evidence, charges were filed against Defendant on November 7, 1996. After several unsuccessful attempts to locate Defendant in state, Detective Hinojosa learned that Defendant was in custody in Nashville, Tennessee. Defendant was extradited to Indiana on March 17, 1997.

After a five-day trial ending on November 21, 1997, a jury found Defendant guilty of Murder,[1] Felony Murder (Robbery),[2] and Robbery,[3] a Class A felony. The trial court merged the latter two convictions into the first and imposed a sentence of 60 years. Defendant does not challenge the sufficiency of the evidence supporting his convictions but appeals certain procedural and evidentiary rulings, claiming that he suffered unfair prejudice.

We will recite additional facts as needed.

## I

Defendant contends that the trial court committed reversible error in denying his motion for a continuance on the morning of the trial. He claims that he was prejudiced by the "court's refusal to grant a continuance due to lack of conference time with his attorney in that his attorney had been unable to depose several witnesses." Appellant's Br. at 8.

■ Indiana Code § 35–36–7–1 provides for a continuance upon a proper showing of an absence of evidence or the illness or absence of the defendant or a witness. Rulings on non-statutory motions for continuance, such as Defendant's, lie within the discretion of the trial court and will be reversed only for an abuse of that discretion and resultant prejudice. *See Chinn v. State,* 511 N.E.2d 1000, 1004 (Ind.1987) (citing *Brown v. State,* 448 N.E.2d 10 (Ind. 1983)); *see also Little v. State,* 501 N.E.2d 447, 449 (1986) ("Any other continuance is

within the sole discretion of the trial court.").

■ Defendant fails to demonstrate that he was prejudiced by the denial of his motion for continuance. *See Vance v. State,* 640 N.E.2d 51, 55 (Ind.1994). He acknowledges that those witnesses whom "his attorney had been unable to depose" were State witnesses who did not testify at trial. *See* Appellant's Br. at 8. And his primary "rationale for his motion, that his attorney did not have time to adequately prepare, was contradicted by the attorney." *Little,* 501 N.E.2d at 449.

Immediately prior to voir dire, defense counsel stated that Defendant was of the opinion that defense counsel was not ready to go to trial. Defense counsel explained,

Mr. Maxey wants me to request a continuance [because] in his opinion, he does not feel that I am ready to go to trial [because] . . . I probably have not seen Mr. Maxey as much as he'd like nor as much as I'd like. . . . But I feel that I'm familiar enough with the discovery; I've gone through it. I feel that, you know, this is gonna be a rather lengthy trial and I'll have plenty of time to consult with him during the course of the trial. . . .

(R. at 124–25.) After noting that the case had been twice continued (once by the State and once by the trial court due to a congested docket), the trial judge offered the following explanation:

I would further point out that the case was filed in November of 1996. Mr. Maxey has not been here since that time. He arrived in our jurisdiction somewhere around the 17th of March. He had an initial hearing on the 18th of March, and [defense counsel] was appointed. And the state's initial discovery response came on April 4th. This is November 17th. So the defendant has been here for eight months, and this is

1. Ind.Code § 35–42–1–1 (1993).

2. *Id.*

3. *Id.* § 35–42–5–1.

not a speedy trial by any means. There's been some supplemental discovery filed. [ (To defense counsel:) ] You're familiar with that? [ (Defense counsel responds:) ] Yes. Judge.
(R. at 127–28.)

This is not a situation where a defendant meets his attorney for the first time shortly before proceeding to trial. *See, e.g., Jones v. State*, 175 Ind.App. 343, 347, 371 N.E.2d 1314, 1316 (1978) ("[The defendant] was tried less than three hours after he first met his trial counsel."); *Hartman v. State*, 155 Ind.App. 199, 207, 292 N.E.2d 293, 297 (1973) ("[C]ounsel was appointed ... on the morning of the trial[;] ... had only a few minutes to discuss the case [with the defendant;] ... had no knowledge of the case or any possible defenses[; and thus] ... did not have sufficient time to adequately prepare for the trial.").

Here, defense counsel had ample time to prepare for trial, including the opportunity to review both initial and supplemental discovery materials. Defendant fails to direct this Court to any portion of the record where he was prejudiced by counsel's representation. Moreover, our review of the record fails to uncover any evidence that defense counsel was not prepared for trial. We find that the trial court did not abuse its discretion in denying Defendant's motion for a continuance.

## II

Defendant next contends that the trial court improperly admitted evidence, over hearsay and relevance objections, that he was apprehended out of state. He argues that this was "evidence of flight," the prejudicial effect of which outweighed its probative value. The evidence was in the form of Detective Hinojosa testifying that "he had obtained information [that] the Defendant had left the area and gone to Tennessee." Appellant's Br. at 8. The State argued at trial that the testimony was admissible because Detective Hinojosa "was recounting the course of his investigation."

Assuming for the moment (an assumption we will revisit) that Detective Hinojosa's testimony that Defendant had gone to Tennessee was comprised entirely of out-of-court statements, we are presented with a classic *Craig* problem. *Craig v. State*, 630 N.E.2d 207 (Ind.1994). *Craig* dealt with the common situation of an investigating police officer testifying as to information learned in the course of investigation. This information would be hearsay if offered to prove the truth of the matters asserted. But the State argues that its admissibility is justified on grounds that it is offered merely to describe the course of the investigation. Here, again assuming that Detective Hinojosa's testimony was comprised entirely of out-of-court statements, the information would be hearsay if offered to prove that Defendant had gone to Tennessee. But the State argues that its admissibility, as noted, was justified on grounds that it was offered merely to describe the course of the investigation.

■ In *Craig*, we required trial courts to perform the following analysis when there is a challenge to the testimony of police detectives who are recounting out-of-court statements received during investigations. *See id.* at 210. First, the trial court should inquire if the testimony describes an out-of-court statement asserting a fact susceptible of being true or false. *See id.* at 211. "If the out-of-court statement does contain an assertion of fact, then the [trial court] should consider ... the evidentiary purpose of the proffered statement." *Id.* Finally, if there is a proffered purpose, the court should ask: "Is the fact to be proved under the suggested purpose for the statement relevant to some issue in the case, and does any danger of prejudice outweigh its probative value?" *Id.*

*Craig* dealt with (and has been used in other cases to analyze) the admissibility of evidence of out-of-court statements received by police officers engaged in investigative work challenged as hearsay.

However, *Craig's* rationale is applicable in analyzing the admissibility of any otherwise inadmissible evidence that the State argues is admissible because it merely describes the course of police investigation. *Cf. Swanson v. State,* 666 N.E.2d 397, 399 (Ind.1996) (holding that the admissibility of evidence theretofore claimed admissible as part of the "res gestae" should henceforth be analyzed by reference to the Indiana Rules of Evidence).

For purposes of conducting a *Craig* analysis, we continue to assume that Detective Hinojosa's testimony described only out-of-court statements. These statements asserted facts susceptible of being true or false, that is, that Defendant had gone to Tennessee. Therefore, we proceed to the next step to consider the evidentiary purpose of the testimony.

■ At trial, the State claimed that the purpose of the testimony was not to prove the facts asserted, but to show the course of police work. As such, we consider whether the evidence of Detective Hinojosa's course of police work is relevant to some issue in the case and whether any danger of prejudice in admitting this evidence outweighed its probative value.

We think that the probative value of this evidence in showing the course of police work was extremely low given that Defendant's apprehension in Tennessee was not a contested issue in this case. *See McIntyre v. State,* 717 N.E.2d 114, 123 (Ind. 1999) ("The facts leading the police to Valparaiso in search of McIntyre were only marginally relevant."). On the other hand, this testimony was extremely relevant to the central issue in the case – Defendant's guilt. This is because, as the State acknowledges, evidence of flight is relevant as circumstantial evidence of Defendant's consciousness of guilt.[4] *See Brown v. State,* 563 N.E.2d 103, 107 (Ind.1990) ("We hardly can say that [the witness's] testimony [that he saw the defendant driving the

getaway car] was not relevant in showing the flight by [the defendant] and was consequently admissible on the issue of consciousness of guilt."); *Menefee v. State,* 514 N.E.2d 1057, 1059 (Ind.1987) (citing *Manna v. State,* 440 N.E.2d 473 (Ind. 1982); *Frith v. State,* 263 Ind. 100, 325 N.E.2d 186 (1975)).

Here, the trial court repeatedly admonished the jury that Detective Hinojosa's testimony was not being "offered as evidence" but to "show[ ] the course of an investigation." (R. at 504, 506, 514.) Nevertheless, if an investigating officer's "course of police work" testimony is comprised solely of inadmissible evidence, the danger of unfair prejudice might very well exceed any probative value, regardless of a trial judge's repeated and strong admonishments to a jury.

However, Detective Hinojosa's testimony as to Defendant's presence in Tennessee did not consist entirely of out-of-court statements. He testified, without objection, that he personally went to Tennessee and observed Defendant in custody. Another witness, Jeries Tadros, also testified to facts establishing that Defendant left Indiana to avoid arrest. As such, any out-of-court statements to that effect presented through Detective Hinojosa's testimony were cumulative of other direct, non-hearsay testimony to Defendant's flight. Under such circumstances, we find any error in allowing the jury to hear the out-of-court statements was harmless.

### III

■ Defendant also contends that the trial court committed reversible error in admitting an affidavit concerning the purchase of handguns linked to him and used in the murder, which contained improper extraneous information in the form of inadmissible hearsay.

---

4. Of course, the fact that such evidence of flight is relevant will not in all circumstances

render it admissible. *See, e.g.,* Evid. R. 403.

At trial, the State sought to admit the affidavit of Ed Hill, which was offered in lieu of his testimony and to provide a foundation for the admission of two receipts that followed in the exhibit. The affidavit established both that Hill was keeper of the records at Blythe's Sport Shop and that the accompanying receipts accurately reflected Linda Ahmed's purchase of two handguns from the shop. Defense counsel made a general hearsay objection to the introduction of the entire exhibit, which was overruled.

We agree with Defendant that the "additional information" contained in the affidavit—in the form of the same serial numbers and weapons caliber information contained in the receipts that followed in the exhibit—was inadmissible hearsay that should have been redacted. However, we will not reverse a trial court for the erroneous admission of evidence that is merely cumulative of other evidence properly admitted. *See Hendricks v. State,* 562 N.E.2d 725, 726 (Ind.1990). And as Defendant concedes, the handgun receipts comprising pages two and three of the same exhibit were properly admitted "under an exception to the hearsay rule for records of regularly conducted business activity." Appellant's Br. at 10 (citing Ind. Evidence Rule 803(6)). While the more prudent course of action would have been to admit the affidavit as a separate exhibit, any error resulting from the admission of the hearsay evidence therein was harmless.

### Conclusion

The trial court is affirmed.

SHEPARD, C.J., and DICKSON, BOEHM and RUCKER, JJ., concur.